No. 100.---WILEY WILLIAMS, Adm'r., plaintiff in error, vs. JOHN V. PRICE, defendant in error.

[1.] The Act of 1823, does not extinguish a judgment, except as to its lien, and capability of enforcement, it does not destroy it, as the evidence of a debt.

[2.] In the administration of assets, a dormant judgment is to be classed with "bonds and other obligations."

[3.] A dormant judgment should not be paid by the representative of an estate until revived, or until the creditors and distributees and heirs have an opportunity of contesting its validity.

Assumpsit, in Muscogee Superior Court. Decision by Judge WORRILL, at November Term, 1856.

This was an action of assumpsit, brought by John V. Price, against Wiley Williams, administrator of Joseph Sturgis, deceased, on a due bill or promissory note made by the deceased, in his lifetime.

The defendant pleaded *plene administravit præter*, and annexed to said plea a large number of judgments, with their dates and amounts, constituting an amount much larger than the assets in hand.

To this plea, plaintiff demurred, on the ground that said judgments against defendant's intestate, as appeared by his

plea, were dormant, no return having been made thereon within seven years, and void until revived by scire facias.

After argument, the presiding Judge sustained the demurrer, and ordered the plea to be stricken off ; to which decision defendant then and there excepted, and assigns error thereon.

WELLBORN, JOHNSON & SLOAN, for plaintiff in error.

G. E. THOMAS, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

What *status*, if any, has a *dormant* judgment in the payment of the debts of the decedent by the executor or administrator ?

The Act of 1792 declares that " The debts due by any testator or intestate, shall be paid in the order following, viz : Funeral and other expenses of last sickness, charges of probate and will, or of letters of administration ; next, debts due to the public ; next, judgments, mortgages, and executions, the eldest first ; next, rent ; then bonds or other obligations ; and lastly, debts due on open accounts," (*Cobb* 287.)

It is unnecessary, so far as the present point is concerned, to refer to subsequent legislation modifying, to some extent, the order in which debts are to be paid, as prescribed by the Act of 1792.

Is a dormant judgment a debt against the estate of the intestate ? In *Lockwood vs. Barefield* 7 *Ga. Rep., p.* 793, this Court say : "The judgment when dormant under the statute, is not extinct, but impotent ; the *scire facias* does not create a new judgment, it awakens a sleeping judgment, and gives it all the attributes which it had when first rendered. In this view of it, the Act of 1823 does not extinguish the judgment, except as to its lien and capability of enforcement. *It does not destroy it as the evidence of a debt.*"

In *Carter and wife vs. Colcby,* 8 *Ga. Rep., p.* 351. this

Williams adm'r., vs. Price.

Court again say: "The Act of 1823 was intended for the benefit and protection of bona fide creditors and innocent purchasers, and that this object is effected by extinguishing the lien of the judgment as such and incapacitating it for enforcement. For all other purposes it remains unimpaired. It is the evidence of a debt, and an action can be sustained upon it. It is the highest evidence, record evidence, that the plaintiffs have a just demand against the guardian."

Finally, upon this point, in *Wilcher, adm'r &c., vs. Hamilton* 15 *Ga. Rep., p.* 435, this Court said:---(Judge Benning delivering the opinion.) "In reviving a judgment, is interest to be counted on it for the time during which it has been dormant? It is. This is to be inferred from the last clause of the *proviso*, 'but the lien of such revived judgment on the property of the defendants thereto, shall operate only from the time of such revival,' as the mention of one thing is the exclusion of others. The inference is, that the judgment, when revived, is to be as if it had never died, in all respects, except one, viz, lien. It is therefore to bear interest as if it had been left continuously alive. Besides, this is the dictate of natural justice, if indeed it is not the express command of positive law. The judgment of revivor is but evidence that a debt (*a liquidated demand*,) has never been paid, although appearances may be to the contrary. And the law makes liquidated demands bear interest during the whole period, through which they pass unpaid."

Thus it will be perceived that this Court has uniformly held, that it is the *lien* only, and not the *debt* which is extinguished by the operation of the dormant judgment Act.

A dormant judgment then, being a debt against the estate, (a liquidated demand bearing interest) the next enquiry is, to what class in point of dignity, that is, as it respects priority of payment, does it belong? It must belong to one of three. It must either be a judgment; a liquidated demand and included under the words in the statute, "other obligations," which means all liquidated demands not otherwise mention-

ed, (see *Davis and others. vs. Smith and others* 5 *Ga. Rep.*, *p.* 274,) or it is a debt due on open account.

It is not a judgment proper, for the Act of 1792 (*Cobb* 287) had reference, obviously, to operative judgments, having a lien on the property of the testator or intestate at the time of his death. Hence the provision, that the oldest of these should be paid first. A dormant judgment has no lien, until revived, and a judgment of revival, subsequent to the death of the debtor, would not advance the dignity of the debt. The status of the debt is fixed at the death. No one will contend that a dormant judgment, though older in date, would take precedence of a junior judgment which was subsisting at the death.

Secondly, it does not fall under the head of open accounts, which are the lowest grade of debts to be paid, " Lastly, open accounts." The amount due upon the judgment, is certain and ascertained. It is a debt of record. The plea of *nil debet* would not lie to a *scire facias* to revive the judgment, nor to an action of debt upon the judgment, no more than it would on any other domestic judgment, or to a suit on a judgment of South Carolina or any other State of the Union: accord, and satisfaction, release, &c., or something occurring subsequent to the rendition of the judgment, could alone be pleaded.

We are shut in, therefore, to the conclusion, that it is to rank with bonds and other obligations; and that is the footing upon which dormant and undocketed judgments stand in England, in the administration of assets.

But while it is conceded that it may become a debt, by revival, yet it is insisted that under the dormant judgment Act of 1823 (*Cobb* 498) it counts for nothing, until that is done, and that consequently it must be postponed to even open accounts. I respectfully submit, that if it be a debt at all, it is the duty of the Courts to arrange it under one of the existing classifications, and that they have no right to add another not provided for by the statute. It must take its

Williams, adm'r, vs. Price.

place under some one of the several classes already designated. Moreover, admitting the premises, the conclusion does not necessarily nor legitimately follow. There are frequently outstanding claims against an estate, which the representative dare not pay until they are adjusted, and yet, when ascertained, sweep away the whole of the assets from the rest of the creditors. The deceased may have been a debtor upon an official bond to the public, or a defaulting trustee, and although the extent of his liability is unknown and can only be determined by a judgment or decree, still, the representative must retain the assets at his peril, to satisfy the amount which may be recovered.

I see nothing, either, in the fact that the dormant judgment Act is of a later date than the Act of 1792, which has any bearing upon the question.

It would be well, I think, in all cases, for executors and administrators, instead of paying dormant judgments voluntarily, to require them to be renewed, or to give the creditors, legatees and distributees an opportunity, by bill or otherwise, to contest their validity; still we hold that they would be guilty of a *devastavit*, not to provide for their pro-rata payment according to the condition and circumstances of the estate.

Judgment reversed.

McDONALD, J. concurred.

BENNING, J. dissenting.

The first section of the dormant judgment Act of 1823, says in so many words, that a dormant judgment "shall be void and of no effect," Words of stronger power of nullification are not to be found in the language.

If, therefore, these words are to be operative, a dormant judgment, as long as it remains dormant, is void and of no effect. And they are to be operative, unless there is something outside of them to prevent it.

Is there anything outside of them to prevent it?

It is said that there is, and in the *proviso* of the same section. The proviso is in these words, "provided that nothing in this act contained, shall prevent the plaintiff or plaintiffs in such judgments from renewing the same after the expiration of the said seven years, in cases where, by law, he or they would be otherwise entitled so to do, but the lien of such revived judgments on the property of the defendants thereto, shall operate only from the time of such revival."

"But the lien shall operate only from the time of such revival;" it is true that these words admit of the implication that as to everything else than lien, the revived judgment shall operate" from a time previous to that of the revival, say from the date of the judgement. But this is merely saying what shall be the effect of the judgment *when renewed.* It is not saying anything about what is to be the effect of the judgment whilst it remains in a state of dormancy, and therefore it is not saying anything that can affect what was said in the part of the section preceding the *proviso ;* for what was said in that part of the section, related exclusively to the judgment whilst in a state of dormancy.

If we admit that a judgment, *when revived,* is to *relate back* to the time when it began to be dormant for *all* purposes, it does not by any means follow that we make any admission of any sort, about the judgment whilst it was in a state of dormancy.

There being, then, nothing in the proviso to prevent the words of the other part of the section from having their full effect, I think that they ought to be allowed to have that effect.

No argument for construing this statute differently from this can be drawn from the construction put upon the statute of *West.* 2, *c.* 1., 45, which gives a *scire facias* to revive a judgment, because that statute so far from saying that the judgment whilst needing revival, should be void and of no effect, said that it should have certain "*force.*"    ts words

are "that those things that are found enrolled before them that have the record or contained in fine, whether they be contracts, covenants, obligations, services or customs, recognizances or other things whatsoever enrolled, to which the King's Court may lawfully give effect, from henceforth shall have such force, that hereafter it shall not be necessary to implead upon them," &c. Of course such things could not be held to be void. Rather, it was necessary to hold, that they were entitled to the presumption of being considered valid, 2 *Tidd's Pr.* 1103.

I think, then, that as this judgment had not been revived, it was to be treated by the administrator as void. If it had been in a revived state, a question would have arisen as to the rank it would hold among the debts against the administrator.

In the view which I take of the case, that question does not arise, and therefore, I only say of it, that it is to me, a question of some difficulty.

For these reasons I go for affirming the judgment of the Court.